FILED

2019 SEP 17 PM 3:57

CLERK U.S. DISTRIC...
CENTRAL DIST. OF CAL.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

         v.

AMIR FRIEDMAN,

      Defendant.

No. 19CR00554 JFW

I N F O R M A T I O N

[18 U.S.C. § 371: Conspiracy;
18 U.S.C. §§ 981(a)(1)(C),
982(a)(7) and 28 U.S.C.
§ 2461(c): Criminal Forfeiture]

The United States Attorney charges:

[18 U.S.C. § 371]

A.   GENERAL ALLEGATIONS

    At times relevant to this Information:

Defendant and Related Entities and Individuals

    1.   Pharmacy Owner A, along with other un-indicted
conspirators, owned and operated several compounding pharmacies,
including Pharmacy A, located in Beverly Hills, California,
within the Central District of California.  Pharmacy A was
reimbursed by health care benefit programs for dispensing
prescriptions and other pharmaceuticals, including "custom"
over-the-counter drugs, such as Terocin, which was a pain relief

1  product for minor aches and pains of muscles and joints.

2      2.    Unindicted co-conspirator Marketer A was a marketer,

3  based in California, who, through Marketing Entity A, was paid

4  commissions for facilitating the referral of prescriptions for

5  compounded drugs and other pharmaceuticals, including Terocin.

6      3.    Defendant AMIR FRIEDMAN was an anesthesiologist

7  licensed in California, who wrote prescriptions for compounded

8  and over-the-counter drugs for patients. Defendant FRIEDMAN

9  caused such prescriptions to be routed to Pharmacy A for

10  dispensing, in exchange for kickback and bribe payments from

11  Marketer A.

12      State Workers' Compensation System

13      4.    The California Workers' Compensation System ("CWCS")

14  was a system created by California law to provide insurance

15  covering treatment of injury and illness suffered by individuals

16  in the course of their employment. Under the CWCS, employers

17  were required to purchase workers' compensation insurance

18  policies from insurance carriers to cover their employees. When

19  an employee suffered a covered injury or illness and received

20  medical services, the medical service provider submitted a claim

21  for payment to the relevant insurance carrier, which then paid

22  the claim. Claims were submitted to and paid by the insurance

23  carriers by mail and electronically. The CWCS was governed by

24  various California laws and regulations.

25      5.    California law, including the California Business and

26  Professions Code and the California Insurance Code, prohibited

27  the offering, delivering, soliciting, or receiving of anything

28  of value in return for referring a patient for medical items or

2

1  services.

2  Fiduciary Duties

3    6.    Physicians, among other medical professionals, owed a

4  fiduciary duty to their patients, requiring these fiduciaries to

5  act in the best interest of the patients, and not for their own

6  professional, pecuniary, or personal gain.  These fiduciaries

7  owed a duty of honest services to their patients for decisions

8  made relating to the medical care and treatment of those

9  patients, including the recommending and prescribing of

10 pharmaceuticals to such patients.  A patient's right to honest

11 services from these fiduciaries included the right not to have

12 the fiduciaries solicit or accept bribes and kickbacks connected

13 to the medical care or treatment of such patients/customers.

14 Health Care Programs

15    7.    State workers' compensation insurance carriers, along

16 with other public and private plans and contracts that Pharmacy

17 A billed for compounded drug prescription reimbursements, were

18 "health care benefit programs," as defined by 18 U.S.C. § 24(b),

19 that affected commerce (collectively, the "Affected Health Care

20 Plans").

21 Compounded Drugs

22    8.    In general, "compounding" was a practice in which a

23 licensed pharmacist, a licensed physician, or, in the case of an

24 outsourcing facility, a person under the supervision of a

25 licensed pharmacist, combined, mixed, or altered ingredients of

26 a drug or multiple drugs to create a drug tailored to the needs

27 of an individual patient.  The Food & Drug Administration did

28 not verify the safety, potency, effectiveness, or manufacturing

3

quality of compounded drugs, that is, compounded drugs were not FDA-approved.  The California State Board of Pharmacy regulated the practice of compounding in the State of California.

9.  Compounded drugs were prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient.  For example, if a patient were allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug would be prepared excluding the substance that triggered the allergic reaction. Compounded drugs would also be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or a child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

B.   OBJECTS OF THE CONSPIRACY

10.  Beginning by no later than in or about August 2013, and continuing through at least in or about May 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant FRIEDMAN, Pharmacy Owner A, and Marketer A, and others known and unknown to the United States Attorney, knowingly conspired to commit the following offenses against the United States:

a.   mail fraud, including through the deprivation of honest services, in violation of Title 18, United States Code, Sections 1341 and 1346;

b.   wire fraud, including through the deprivation of honest services, in violation of Title 18, United States Code, Sections 1343 and 1346; and

1  c.   use of the mails and interstate facilities in aid

2  of bribery, in violation of Title 18, United States Code,

3  Section 1952(a)(1) and (3).

4  C.   MANNER AND MEANS OF THE CONSPIRACY

5     11.   The objects of the conspiracy were carried out, and to

6  be carried out, in substance, as follows:

7        a.   Pharmacy Owner A would pay Marketer A kickbacks

8  in exchange for arranging for, recommending, and causing the

9  referral of, pre-formulated prescriptions for compounded drugs

10 and other pharmaceuticals (collectively, "Kickback Tainted

11 Prescriptions") to Pharmacy A.

12       b.   Based on these payments, Marketer A would offer

13 kickbacks and bribes to defendant FRIEDMAN, who, in response to

14 the promise of kickbacks and bribes, would refer and cause the

15 referral of Kickback Tainted Prescriptions to Pharmacy A.

16       c.   Pharmacy A would dispense compounded drugs and

17 other pharmaceuticals authorized by the Kickback Tainted

18 Prescriptions; send these items to patient-beneficiaries through

19 the mail, and submit the corresponding claims for reimbursement

20 to the Affected Health Care Plans.

21       d.   Based on these reimbursements, Pharmacy A would

22 pay Marketer A, who, in turn, would write checks representing

23 kickback and bribe payments to defendant FRIEDMAN, who would

24 continue to authorize Kickback Tainted Prescriptions.

25 D.   OVERT ACTS

26    12.   In furtherance of the conspiracy and to accomplish its

27 objects, on or about the following dates, defendant FRIEDMAN and

28 other co-conspirators known and unknown to the United States

5

Attorney, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:    On August 7, 2013, defendant FRIEDMAN caused Marketer A to issue check number 2032, drawn on Marketing Entity A's Bank of America account ending in 0636 (the "0636 BofA Acct"), in the amount of $22,000, to defendant FRIEDMAN.

Overt Act No. 2:    On March 27, 2015, defendant FRIEDMAN caused Marketer A to issue check number 1110, drawn on the 0636 BofA Acct, in the amount of $40,000, to defendant FRIEDMAN.

Overt Act No. 3:    On May 28, 2015, defendant FRIEDMAN caused Marketer A to issue check number 1147, drawn on the 0636 BofA, in the amount of $32,600, to defendant FRIEDMAN.

1

FORFEITURE ALLEGATION

2

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3       13.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is

4   hereby given to defendant FRIEDMAN that the United States will

5   seek forfeiture as part of any sentence in accordance with Title

6   18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) and

7   Title 28, United States Code, Section 2461(c), in the event of

8   defendant FRIEDMAN's conviction of the offense set forth in this

9   Information.

10      14.   Defendant FRIEDMAN, if so convicted, shall forfeit to

11  the United States of America the following:

12          (a)   all right, title, and interest in any and all

13  property, real or personal, constituting, or derived from, any

14  proceeds traceable to the offense; and

15          (b)   To the extent such property is not available for

16  forfeiture, a sum of money equal to the total value of the

17  property described in subparagraph (a).

18      15.   Pursuant to Title 21, United States Code, Section

19  853(p), as incorporated by Title 28, United States Code, Section

20  2461(c), defendant FRIEDMAN, if so convicted, shall forfeit

21  substitute property, up to the value of the property described

22  in the preceding paragraph if, as the result of any act or

23  omission of defendant FRIEDMAN, the property described in the

24  preceding paragraph or any portion thereof (a) cannot be located

25  upon the exercise of due diligence; (b) has been transferred,

26  sold to, or deposited with a third party; (c) has been placed

27  beyond the jurisdiction of the court; (d) has been substantially

28

1   diminished in value; or (e) has been commingled with other

2   property that cannot be divided without difficulty.

3                                    NICOLA T. HANNA
                                     United States Attorney

4

5                                    Scott M. Garringer
                                     Deputy Chief, Criminal Division For:

6                                    BRANDON D. FOX
                                     Assistant United States Attorney
7                                    Chief, Criminal Division

8                                    RANEE A. KATZENSTEIN
                                     Assistant United States Attorney
9                                    Chief, Major Frauds Section

10                                   KRISTEN A. WILLIAMS
                                     Assistant United States Attorney
11                                   Deputy Chief, Major Frauds Section

12                                   ASHWIN JANAKI RAM
                                     Assistant United States Attorney
13                                   Major Frauds Section

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28