FILED

1  NICOLA T. HANNA            2019 SEP 17 PM 3:58
   United States Attorney
2  BRANDON D. FOX             CLERK U.S. DISTRIC
   Assistant United States Attorney   CENTRAL DIST. OF CA.
3  Chief, Criminal Division          LOS ANGELES
   ASHWIN JANAKIRAM (Cal. Bar No. 277513)   BY:
4  Assistant United States Attorneys
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-2875
7       Facsimile: (213) 894-0141
        E-mail:   ashwin.janakiram@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10               UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,        NO. CR00554 JFW

13          Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                    AMIR FRIEDMAN
14               v.

15 AMIR FRIEDMAN,

16          Defendant.

17

18      1.    This constitutes the plea agreement between AMIR FRIEDMAN

19 ("defendant") and the United States Attorney's Office for the Central

20 District of California ("the USAO") in the investigation of

21 defendant's receipt of kickbacks and bribes from New Age

22 Pharmaceuticals, Inc.  This agreement is limited to the USAO and

23 cannot bind any other federal, state, local, or foreign prosecuting,

24 enforcement, administrative, or regulatory authorities.

25                   DEFENDANT'S OBLIGATIONS

26      2.    Defendant agrees to:

27      a.    At the earliest opportunity requested by the USAO and

28 provided by the Court, appear and plead guilty to a single-count

1  information in the form attached to this agreement as Exhibit A or a

2  substantially similar form (the "information"), which charges

3  defendant with conspiracy to commit honest services mail and wire

4  fraud and interstate travel in aid of bribery, in violation of 18

5  U.S.C. § 371.

6         b.   Not contest facts agreed to in this agreement.

7         c.   Abide by all agreements regarding sentencing contained

8  in this agreement.

9         d.   Appear for all court appearances, surrender as ordered

10  for service of sentence, obey all conditions of any bond, and obey

11  any other ongoing court order in this matter.

12         e.   Not commit any crime; however, offenses that would be

13  excluded for sentencing purposes under United States Sentencing

14  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

15  within the scope of this agreement.

16         f.   Be truthful at all times with the United States

17  Probation and Pretrial Services Office and the Court.

18         g.   Pay the applicable special assessment at or before the

19  time of sentencing unless defendant lacks the ability to pay and

20  prior to sentencing submits a completed financial statement on a form

21  to be provided by the USAO.

22      3.   Defendant further agrees:

23         a.   To forfeit personally and on behalf of any Defendant

24  Entity (defined as any entity in which defendant has held an

25  ownership interest; in which defendant has served as an officer,

26  director, manager, partner, trustee or other representative; or over

27  which defendant has had the ability, whether through position or

28  formal or informal agreement, to exercise control), all right, title,

and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty (the "Forfeitable Assets").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.    That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.    To the entry as part of defendant's guilty plea of a money judgment of forfeiture against defendant and any Defendant Entity in the amount of $788,140, which sum defendant admits defendant obtained, received and possessed as a result of his violation of 18 U.S.C. § 371, as charged in the information, and which judgment defendant agrees can be enforced against assets owned by defendant.

k.    Defendant further agrees, should the USAO in its sole discretion instruct defendant in writing to do so, to make the payments set forth above via wire transfer, rather than by delivery of a cashier's check, to an account designated in writing by the USAO.

l.    Defendant understands that the money judgment of forfeiture is part of defendant's sentence, and is separate from any fines or restitution that may be imposed by the Court.  However, if the Money Laundering and Asset Recovery Section ("MLARS") of the Department of Justice grants any petition for remission submitted by a victim of defendant's illegal activities as set forth in the information attached to this agreement as Exhibit A, then the USAO will not object to defendant receiving a credit towards payment of restitution in the amount actually paid to the victim pursuant to MLARS' grant of the petition for remission.

4

m.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment.  Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

4.    Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation, United States Postal Service - Office of Inspector General, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

d.    If requested to do so by the USAO, act in an undercover capacity to the best of defendant's ability in connection with criminal investigations by federal, state, local, or foreign law

1  enforcement authorities, in accordance with the express instructions

2  of those law enforcement authorities.  Defendant agrees not to act in

3  an undercover capacity, tape record any conversations, or gather any

4  evidence except after a request by the USAO and in accordance with

5  express instructions of federal, state, local, or foreign law

6  enforcement authorities.

7       5.   For purposes of this agreement: (1) "Cooperation

8  Information" shall mean any statements made, or documents, records,

9  tangible evidence, or other information provided, by defendant

10  pursuant to defendant's cooperation under this agreement or pursuant

11  to the letter agreement previously entered into by the parties dated

12  October 31, 2018 (the "Letter Agreement"); and (2) "Plea Information"

13  shall mean any statements made by defendant, under oath, at the

14  guilty plea hearing and the agreed to factual basis statement in this

15  agreement.

16                    THE USAO'S OBLIGATIONS

17       6.   The USAO agrees to:

18            a.   Not contest facts agreed to in this agreement.

19            b.   Abide by all agreements regarding sentencing contained

20  in this agreement.

21            c.   Except for criminal tax violations (including

22  conspiracy to commit such violations chargeable under 18 U.S.C.

23  § 371), not further criminally prosecute defendant for violations of

24  18 U.S.C. §§ 371, 1341, 1343, 1347, 1349, 1952, 1956, and 1957, and

25  42 U.S.C. § 1320a-7b(b), arising out of defendant's conduct

26  described in the agreed-to factual set forth in paragraph 17 below.

27  Defendant understands that the USAO is free to criminally prosecute

28  defendant for any other unlawful past conduct or any unlawful conduct

that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

    d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

    7.   The USAO further agrees:

    a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

1       b.    Not to use Cooperation Information against defendant
2   at sentencing for the purpose of determining the applicable guideline
3   range, including the appropriateness of an upward departure, or the
4   sentence to be imposed, and to recommend to the Court that
5   Cooperation Information not be used in determining the applicable
6   guideline range or the sentence to be imposed.  Defendant
7   understands, however, that Cooperation Information will be disclosed
8   to the United States Probation and Pretrial Services Office and the
9   Court, and that the Court may use Cooperation Information for the
10  purposes set forth in U.S.S.G § 1B1.8(b) and for determining the
11  sentence to be imposed.
12      c.    In connection with defendant's sentencing, to bring to
13  the Court's attention the nature and extent of defendant's
14  cooperation.
15      d.    If the USAO determines, in its exclusive judgment,
16  that defendant has both complied with defendant's obligations under
17  paragraphs 2 and 4 above and provided substantial assistance to law
18  enforcement in the prosecution or investigation of another
19  ("substantial assistance"), to move the Court pursuant to U.S.S.G.
20  § 5K1.1 to fix an offense level and corresponding guideline range
21  below that otherwise dictated by the sentencing guidelines, and to
22  recommend a term of imprisonment within this reduced range.
23          DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION
24  8.  Defendant understands the following:
25      a.    Any knowingly false or misleading statement by
26  defendant will subject defendant to prosecution for false statement,
27  obstruction of justice, and perjury and will constitute a breach by
28  defendant of this agreement.

8

b. Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c. Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d. At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance. The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e. The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

NATURE OF THE OFFENSE

9. Defendant understands that for defendant to be guilty of the crime charged in the information, that is, conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) between in or about at least August 2013 and in or about at least May 2015, there was an agreement between two or more persons to commit at least one object of the conspiracy as charged in the information; (2) the defendant became a member of the conspiracy

9

1  knowing of at least one of its objects and intending to help

2  accomplish it; and (3) one of the members of the conspiracy performed

3  at least one overt act for the purpose of carrying out the

4  conspiracy.

5      10.  Defendant understands that Honest Services Mail and Wire

6  Fraud, in violation of Title 18, United States Code, Sections 1341

7  and 1346, and 1343 and 1346, respectively, each an object of the

8  conspiracy charged in the information, have the following elements:

9  (1) the defendant devised or participated in a scheme or plan to

10  deprive a patient of his or her right to honest services; (2) the

11  scheme or plan included payments of kickbacks and bribes to medical

12  professionals in exchange for medical services or items; (3) the

13  medical professionals owed a fiduciary duty to the patients; (4) the

14  defendant acted with the intent to defraud by depriving the patients

15  of their right of honest services of the medical professionals;

16  (5) the defendant's act was material, that is, it had a natural

17  tendency to influence, or was capable of influencing, a patient's

18  acts; and (6) the defendant used, or caused someone to use, the mails

19  (in the case of Honest Services Mail Fraud) and a wire communication

20  (in the case of Honest Services Wire Fraud) to carry out or attempt

21  to carry out the scheme or plan.

22      11.  Defendant understands that Interstate Travel in Aid of

23  Bribery, in violation of Title 18, United States Code, Section

24  1952(a)(3), one of the objects of the conspiracy charged in the

25  information, has the following elements: (1) defendant used the mail

26  or a facility of interstate commerce, (2) with the intent to promote,

27  manage, establish, or carry on, or facilitate the promotion,

28  management, establishment, or carrying on, of unlawful activity,

10

specifically bribery in violation of California law, including
California Business & Professions Code § 650 and California Insurance
Code § 750; and (3) after doing so, defendant performed or attempted
to perform an act to promote, manage, establish, or carry on, or
facilitate the promotion, management, establishment, or carrying on,
of such unlawful activity.

## PENALTIES AND RESTITUTION

12.   Defendant understands that the statutory maximum sentence
that the Court can impose for a violation of Title 18, United States
Code, Section 371, as charged in count one of the Information, is:
five years' imprisonment, a three-year period of supervised release;
a fine of $250,000 or twice the gross gain or gross loss resulting
from the offense, whichever is greater; and a mandatory special
assessment of $100.

13.   Defendant understands that defendant will be required to
pay full restitution to the victims of the offense to which defendant
is pleading guilty.  Defendant agrees that, in return for the USAO's
compliance with its obligations under this agreement, the Court may
order restitution to persons other than the victims of the offense to
which defendant is pleading guilty and in amounts greater than those
alleged in the count to which defendant is pleading guilty.  In
particular, defendant agrees that the Court may order restitution to
any victim of any of the following for any losses suffered by that
victim as a result: (a) any relevant conduct, as defined in U.S.S.G.
§ 1B1.3, in connection with the offenses to which defendant is
pleading guilty; and (b) any charges not prosecuted pursuant to this
agreement as well as all relevant conduct, as defined in U.S.S.G.
§ 1B1.3, in connection with those charges.

1      14.   Defendant understands that supervised release is a period

2   of time following imprisonment during which defendant will be subject

3   to various restrictions and requirements.   Defendant understands that

4   if defendant violates one or more of the conditions of any supervised

5   release imposed, defendant may be returned to prison for all or part

6   of the term of supervised release authorized by statute for the

7   offense that resulted in the term of supervised release, which could

8   result in defendant serving a total term of imprisonment greater than

9   the statutory maximum stated above.

10     15.   Defendant understands that, by pleading guilty, defendant

11   may be giving up valuable government benefits and valuable civic

12   rights, such as the right to vote, the right to possess a firearm,

13   the right to hold office, and the right to serve on a jury.

14   Defendant understands that once the Court accepts defendant's guilty

15   plea, it will be a federal felony for defendant to possess a firearm

16   or ammunition.   Defendant understands that the conviction in this

17   case may also subject defendant to various other collateral

18   consequences, including but not limited to revocation of probation,

19   parole, or supervised release in another case and suspension or

20   revocation of a professional license.   Defendant understands that

21   unanticipated collateral consequences will not serve as grounds to

22   withdraw defendant's guilty plea.

23     16.   Defendant understands that, if defendant is not a United

24   States citizen, the felony conviction in this case may subject

25   defendant to: removal, also known as deportation, which may, under

26   some circumstances, be mandatory; denial of citizenship; and denial

27   of admission to the United States in the future.   The Court cannot,

28   and defendant's attorney also may not be able to, advise defendant

1  fully regarding the immigration consequences of the felony conviction

2  in this case.  Defendant understands that unexpected immigration

3  consequences will not serve as grounds to withdraw defendant's guilty

4  plea.

FACTUAL BASIS

6  17.  Defendant admits that defendant is, in fact, guilty of the

7  offense to which defendant is agreeing to plead guilty.  Defendant

8  and the USAO agree to the statement of facts provided below and agree

9  that this statement of facts is sufficient to support a plea of

10  guilty to the charge described in this agreement and to establish the

11  Sentencing Guidelines factors set forth in paragraph 19 below but is

12  not meant to be a complete recitation of all facts relevant to the

13  underlying criminal conduct or all facts known to either party that

14  relate to that conduct.

15  Relevant Entities and Individuals

16  Defendant was an anesthesiologist licensed in California, who

17  owed a fiduciary duty to his patients to act in their best interests,

18  and not for his own professional, pecuniary, or personal gain.

19  Defendant violated his fiduciary duty to patients by accepting

20  kickbacks and bribes for writing prescriptions for compounded drugs

21  for his patients.

22  Pharmacy Owner A ("Pharmacy Owner A"), along with other un-

23  indicted conspirators, owned and operated several compounding

24  pharmacies, including New Age Pharmaceuticals, Inc. ("New Age"),

25  located in Beverly Hills, California, within the Central District of

26  California.  New Age was reimbursed by insurance companies under the

27  California Workers' Compensation System, among other health care

28  benefit programs, for dispensing prescription drugs and other

13

1  pharmaceuticals, including "custom" over-the-counter drugs, such as

2  Terocin, which was a pain relief product for minor aches and pains of

3  muscles and joints.

4      Marketer A ("Marketer A") was a marketer, based in California,

5  who, through Marketing Entity A, was paid commissions for

6  facilitating the referral of prescriptions for compounded drugs and

7  other pharmaceuticals such as Terocin.

8      The Kickback and Bribe Arrangement

9      No later than approximately August 2013, and continuing through

10  approximately May 2015, in Los Angeles County, within the Central

11  District of California, and elsewhere, defendant, Pharmacy Owner A,

12  and Marketer A, conspired to commit honest services mail and wire

13  fraud and Travel Act violations.

14      As part of the conspiracy, Marketer A provided pre-printed

15  prescription pads for compounded drugs to defendant and offered

16  defendant kickbacks and bribes for each such prescription he

17  authorized (the "Kickback-Tainted Prescriptions").  Influenced by the

18  promise of kickbacks and bribes, defendant authorized the Kickback-

19  Tainted Prescriptions for dispensing at New Age, among other

20  pharmacies.  After processing the Kickback-Tainted Prescriptions, New

21  Age dispensed the compounded drugs, billed insurance companies for

22  reimbursement, and shipped the compounded drugs to patients through

23  the mail.

24      Knowledge/Willfulness

25      Defendant and his co-conspirators knew that the payment of

26  kickbacks and bribes for the referral of prescriptions for compounded

27  drugs was illegal.  Defendant further understood that, had he stopped

28  authorizing prescription referrals for New Age, Marketer A would

1    cease making payments for the benefit of defendant.  In accepting the
2    kickbacks and bribes, defendant intended to defraud the patients for
3    whom he referred prescriptions to New Age by depriving them of his
4    honest services.  The use of interstate wires and mailings to execute
5    essential parts of the scheme was foreseeable to defendant and his
6    co-conspirators.  Moreover, interstate wires and mailings were, in
7    fact, used to execute essential parts of the scheme and to distribute
8    the proceeds of, and promote, manage, establish, carry on, and
9    facilitate the promotion, management, establishment, and carrying out
10   of unlawful activity, specifically the payment and receipt of
11   kickbacks and bribes, in violation of California Business &
12   Professions Code Section 650(a) and California Insurance Code Section
13   750(a).

14        Defendant was also aware that the compounded drugs he prescribed
15   were far more expensive than the FDA-approved drug equivalents that
16   were otherwise available.  Defendant understood that the payment of
17   kickbacks and bribes for the referral of prescriptions for compounded
18   drugs was material to both patients and health care benefit programs
19   to which New Age submitted claims for Kickback Tainted Prescriptions.
20   In other words, defendant knew that these patients and programs would
21   have wanted to know that defendant was receiving kickbacks and bribes
22   in connection with prescribing compounded drugs for dispensing at New
23   Age.

24        Overt Acts

25        In furtherance of the conspiracy and to accomplish its objects,
26   defendant and his co-conspirators committed various overt acts within
27   the Central District of California, and elsewhere, specifically
28   including, on or about March 27, 2015, defendant caused Marketer A to

issue check number 1110, drawn on Marketing Entity A's Bank of America account ending in 0636, in the amount of $40,000, to defendant in exchange for Kickback-Tainted Prescriptions.

Effects of the Conspiracy

All told, the conspiracy resulted in financial gains to defendant of approximately $788,140 -- a sum he received in the form of approximately 28 check payments that represented the proceeds of honest services mail and wire fraud and Travel Act violations.

SENTENCING FACTORS

18.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

19.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

///

///

///

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. §§ 2X1.1(a), 2E1.2, 2B4.1] |
| Loss greater than $550K: | +14 | [U.S.S.G. § 2B1.1(b)(1)(H)] |
| Abuse of Position of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 21 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 6(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraphs 7(d) above and 35 below, defendant and the USAO agree not to seek or argue, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

20.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

22.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the court appoint counsel – at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

18

1                      WAIVER OF VENUE

2       23.   Having been fully advised by defendant's attorney regarding

3 the requirements of venue with respect to the offense to which

4 defendant is pleading guilty, to the extent the offense to which

5 defendant is pleading guilty was committed, begun, or completed

6 outside the Central District of California, defendant knowingly,

7 voluntarily, and intelligently waives, relinquishes, and gives up:

8 (a) any right that defendant might have to be prosecuted only in the

9 district where the offense to which defendant is pleading guilty were

10 committed, begun, or completed; and (b) any defense, claim, or

11 argument defendant could raise or assert based upon lack of venue

12 with respect to the offense to which defendant is pleading guilty.

13           WAIVER OF STATUTE OF LIMITATIONS

14       24.   Having been fully advised by defendant's attorney regarding

15 application of the statute of limitations to the offense to which

16 defendant is pleading guilty, defendant hereby knowingly,

17 voluntarily, and intelligently waives, relinquishes, and gives up:

18 (a) any right that defendant might have not to be prosecuted for the

19 offense to which defendant is pleading guilty because of the

20 expiration of the statute of limitations for the offense prior to the

21 filing of the information alleging the offense; and (b) any defense,

22 claim, or argument defendant could raise or assert that prosecution

23 of the offense to which defendant is pleading guilty is barred by the

24 expiration of the applicable statute of limitations, pre-indictment

25 delay, or any speedy trial violation.

26           WAIVER OF APPEAL OF CONVICTION

27       25.   Defendant understands that, with the exception of an

28 appeal based on a claim that defendant's guilty plea was involuntary,

1  by pleading guilty defendant is waiving and giving up any right to

2  appeal defendant's conviction on the offense to which defendant is

3  pleading guilty.  Defendant understands that this waiver includes,

4  but is not limited to, arguments that the conspiracy statute to which

5  defendant is pleading guilty, or the underling objects of the charged

6  conspiracy are unconstitutional, and any and all claims that the

7  statement of facts provided herein is insufficient to support

8  defendant's plea of guilty.

9              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

10      26.  Defendant agrees that, provided the Court imposes a term of

11  imprisonment within the total statutory maximum, defendant gives up

12  the right to appeal all of the following: (a) the procedures and

13  calculations used to determine and impose any portion of the

14  sentence; (b) the term of imprisonment imposed by the Court; (c) the

15  fine imposed by the Court, provided it is within the statutory

16  maximum; (d) the amount and terms of any restitution order; (e) the

17  term of probation or supervised release imposed by the Court,

18  provided it is within the statutory maximum; and (f) any of the

19  following conditions of probation or supervised release imposed by

20  the Court: the conditions set forth in General Order 18-10 of this

21  Court; the drug testing conditions mandated by 18 U.S.C.

22  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

23  authorized by 18 U.S.C. § 3563(b)(7).

24      27.  Defendant also gives up any right to bring a post-

25  conviction collateral attack on the conviction or sentence, including

26  any order of restitution, except a post-conviction collateral attack

27  based on a claim of ineffective assistance of counsel, a claim of

28  newly discovered evidence, or an explicitly retroactive change in the

1   applicable Sentencing Guidelines, sentencing statutes, or statutes of

2   conviction.  Defendant understands that this waiver includes, but is

3   not limited to, arguments that the either the conspiracy statute or

4   the statutes underlying the objects of the conspiracy to which

5   defendant is pleading guilty are unconstitutional, and any and all

6   claims that the statement of facts provided herein is insufficient to

7   support defendant's plea of guilty.

8        28.  This agreement does not affect in any way the right of the

9   USAO to appeal the sentence imposed by the Court.

10                  RESULT OF WITHDRAWAL OF GUILTY PLEA

11       29.  Defendant agrees that if, after entering a guilty plea

12  pursuant to this agreement, defendant seeks to withdraw and succeeds

13  in withdrawing defendant's guilty plea on any basis other than a

14  claim and finding that entry into this plea agreement was

15  involuntary, then (a) the USAO will be relieved of all of its

16  obligations under this agreement, including in particular its

17  obligations regarding the use of Cooperation Information; (b)  in any

18  investigation, criminal prosecution, or civil, administrative, or

19  regulatory action, defendant agrees that any Cooperation Information

20  and any evidence derived from any Cooperation Information shall be

21  admissible against defendant, and defendant will not assert, and

22  hereby waives and gives up, any claim under the United States

23  Constitution, any statute, or any federal rule, that any Cooperation

24  Information or any evidence derived from any Cooperation Information

25  should be suppressed or is inadmissible; and (c) should the USAO

26  choose to pursue any charge that was not filed as a result of this

27  agreement, then (i) any applicable statute of limitations will be

28  tolled between the date of defendant's signing of this agreement and

21

1   the filing commencing any such action; and (ii) defendant waives and

2   gives up all defenses based on the statute of limitations, any claim

3   of pre-indictment delay, or any speedy trial claim with respect to

4   any such action, except to the extent that such defenses existed as

5   of the date of defendant's signing this agreement.

6                 RESULT OF VACATUR, REVERSAL OR SET-ASIDE

7        30.  Defendant agrees that if the count of conviction is

8   vacated, reversed, or set aside, both the USAO and defendant will be

9   released from all their obligations under this agreement.

10                 EFFECTIVE DATE OF AGREEMENT

11       31.  This agreement is effective upon signature and execution of

12  all required certifications by defendant, defendant's counsel, and an

13  Assistant United States Attorney.

14                      BREACH OF AGREEMENT

15       32.  Defendant agrees that if defendant, at any time after the

16  effective date of this agreement, knowingly violates or fails to

17  perform any of defendant's obligations under this agreement ("a

18  breach"), the USAO may declare this agreement breached.  For example,

19  if defendant knowingly, in an interview, before a grand jury, or at

20  trial, falsely accuses another person of criminal conduct or falsely

21  minimizes defendant's own role, or the role of another, in criminal

22  conduct, defendant will have breached this agreement.  All of

23  defendant's obligations are material, a single breach of this

24  agreement is sufficient for the USAO to declare a breach, and

25  defendant shall not be deemed to have cured a breach without the

26  express agreement of the USAO in writing.  If the USAO declares this

27  agreement breached, and the Court finds such a breach to have

28  occurred, then:

                                   22

1          a.    If defendant has previously entered a guilty plea
2    pursuant to this agreement, defendant will not be able to withdraw
3    the guilty plea.
4          b.    The USAO will be relieved of all its obligations under
5    this agreement; in particular, the USAO: (i) will no longer be bound
6    by any agreements concerning sentencing and will be free to seek any
7    sentence up to the statutory maximum for the crime to which defendant
8    has pleaded guilty; and (ii) will no longer be bound by any agreement
9    regarding the use of Cooperation Information and will be free to use
10   any Cooperation Information in any way in any investigation, criminal
11   prosecution, or civil, administrative, or regulatory action.
12         c.    The USAO will be free to criminally prosecute
13   defendant for false statement, obstruction of justice, and perjury
14   based on any knowingly false or misleading statement by defendant.
15         d.    In any investigation, criminal prosecution, or civil,
16   administrative, or regulatory action: (i) defendant will not assert,
17   and hereby waives and gives up, any claim that any Cooperation
18   Information was obtained in violation of the Fifth Amendment
19   privilege against compelled self-incrimination; and (ii) defendant
20   agrees that any Cooperation Information and any Plea Information, as
21   well as any evidence derived from any Cooperation Information or any
22   Plea Information, shall be admissible against defendant, and
23   defendant will not assert, and hereby waives and gives up, any claim
24   under the United States Constitution, any statute, Rule 410 of the
25   Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
26   Criminal Procedure, or any other federal rule, that any Cooperation
27   Information, any Plea Information, or any evidence derived from any
28

1  Cooperation Information or any Plea Information should be suppressed
2  or is inadmissible.

3     33.  Following the Court's finding of a knowing breach of this
4  agreement by defendant, should the USAO choose to pursue any charge
5  that was not filed as a result of this agreement, then:

6       a.  Defendant agrees that any applicable statute of
7  limitations is tolled between the date of defendant's signing of this
8  agreement and the filing commencing any such action.

9       b.  Defendant waives and gives up all defenses based on
10 the statute of limitations, any claim of pre-indictment delay, or any
11 speedy trial claim with respect to any such action, except to the
12 extent that such defenses existed as of the date of defendant's
13 signing this agreement.

14     COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
15             OFFICE NOT PARTIES

16    34.  Defendant understands that the Court and the United States
17 Probation and Pretrial Services Office are not parties to this
18 agreement and need not accept any of the USAO's sentencing
19 recommendations or the parties' agreements to facts or sentencing
20 factors.

21    35.  Defendant understands that both defendant and the USAO are
22 free to: (a) supplement the facts by supplying relevant information
23 to the United States Probation and Pretrial Services Office and the
24 Court, (b) correct any and all factual misstatements relating to the
25 Court's Sentencing Guidelines calculations and determination of
26 sentence, and (c) argue on appeal and collateral review that the
27 Court's Sentencing Guidelines calculations and the sentence it
28 chooses to impose are not error, although each party agrees to

1  maintain its view that the calculations in paragraph 19 are

2  consistent with the facts of this case.  While this paragraph permits

3  both the USAO and defendant to submit full and complete factual

4  information to the United States Probation and Pretrial Services

5  Office and the Court, even if that factual information may be viewed

6  as inconsistent with the facts agreed to in this agreement, this

7  paragraph does not affect defendant's and the USAO's obligations not

8  to contest the facts agreed to in this agreement.

9      36.  Defendant understands that even if the Court ignores any

10  sentencing recommendation, finds facts or reaches conclusions

11  different from those agreed to, and/or imposes any sentence up to the

12  maximum established by statute, defendant cannot, for that reason,

13  withdraw defendant's guilty plea, and defendant will remain bound to

14  fulfill all of defendant's obligations under this agreement.

15  Defendant understands that no one -- not the prosecutor, defendant's

16  attorney, or the Court -- can make a binding prediction or promise

17  regarding the sentence defendant will receive, except that it will be

18  within the statutory maximum.

19                        NO ADDITIONAL AGREEMENTS

20      37.  Defendant understands that, except as set forth herein,

21  there are no promises, understandings, or agreements between the USAO

22  and defendant or defendant's attorney, and that no additional

23  promise, understanding, or agreement may be entered into unless in a

24  writing signed by all parties or on the record in court.

25  ///

26  ///

27  ///

28

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

38.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney


_____     9/17/19
ASHWIN JANAKIRAM                     Date
Assistant United States Attorney


_____     9/16/2019
AMIR FRIEDMAN                        Date
Defendant


_____     9/16/19
PAUL S. MEYER                        Date
Attorney for Defendant
AMIR FRIEDMAN

26

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.


_____                          9-17-19
AMIR FRIEDMAN                                     Date
Defendant


27

CERTIFICATION OF DEFENDANT's ATTORNEY

I am AMIR FRIEDMAN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.


_____        9/16/19
PAUL S. MEYER                           _____
Attorney for Defendant                  Date
AMIR FRIEDMAN

28

1              **EXHIBIT A**

2

3

4

5

6

7              UNITED STATES DISTRICT COURT

8        FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,          No. CR

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. § 371: Conspiracy;
                                        18 U.S.C. §§ 981(a)(1)(A),
13   AMIR FRIEDMAN,                     981(a)(1)(C), 982(a)(1),
                                        982(a)(7) and 28 U.S.C. §
14            Defendant.                2461(c): Criminal Forfeiture]

15

16

17

18       The United States Attorney charges:

19   A.   GENERAL ALLEGATIONS

20       At times relevant to this Information:

21       Defendant and Related Entities and Individuals

22       1.   Pharmacy Owner A, along with other un-indicted

23   conspirators, owned and operated several compounding pharmacies,

24   including New Age Pharmaceuticals, Inc. ("New Age"), located in

25   Beverly Hills, California, within the Central District of

26   California.  New Age was reimbursed by health care benefit

27   programs for dispensing prescriptions and other pharmaceuticals,

28   including "custom" over-the-counter drugs, such as Terocin,

1  which was a pain relief product for minor aches and pains of

2  muscles and joints.

3      2.    Unindicted co-conspirator Marketer A was a marketer,

4  based in California, who, through Marketing Entity A, was paid

5  commissions for facilitating the referral of prescriptions for

6  compounded drugs and other pharmaceuticals, including Terocin.

7      3.    Defendant AMIR FRIEDMAN was an anesthesiologist

8  licensed in California, who wrote prescriptions for compounded

9  and over-the-counter drugs for patients. Defendant FRIEDMAN

10  caused such prescriptions to be routed to New Age for

11  dispensing, in exchange for kickback and bribe payments from

12  Marketer A.

13     State Workers' Compensation System

14      4.    The California Workers' Compensation System ("CWCS")

15  was a system created by California law to provide insurance

16  covering treatment of injury and illness suffered by individuals

17  in the course of their employment.  Under the CWCS, employers

18  were required to purchase workers' compensation insurance

19  policies from insurance carriers to cover their employees.  When

20  an employee suffered a covered injury or illness and received

21  medical services, the medical service provider submitted a claim

22  for payment to the relevant insurance carrier, which then paid

23  the claim.  Claims were submitted to and paid by the insurance

24  carriers by mail and electronically.  The CWCS was governed by

25  various California laws and regulations.

26      5.    California law, including the California Business and

27  Professions Code and the California Insurance Code, prohibited

28

1   the offering, delivering, soliciting, or receiving of anything

2   of value in return for referring a patient for medical items or

3   services.

4   Fiduciary Duties

5   6.   Physicians, among other medical professionals, owed a

6   fiduciary duty to their patients, requiring these fiduciaries to

7   act in the best interest of the patients, and not for their own

8   professional, pecuniary, or personal gain.  These fiduciaries

9   owed a duty of honest services to their patients for decisions

10  made relating to the medical care and treatment of those

11  patients, including the recommending and prescribing of

12  pharmaceuticals to such patients.  A patient's right to honest

13  services from these fiduciaries included the right not to have

14  the fiduciaries solicit or accept bribes and kickbacks connected

15  to the medical care or treatment of such patients/customers.

16  Health Care Programs

17  7.   State workers' compensation insurance carriers, along

18  with other public and private plans and contracts that New Age

19  billed for compounded drug prescription reimbursements, were

20  "health care benefit programs," as defined by 18 U.S.C. § 24(b),

21  that affected commerce (collectively, the "Affected Health Care

22  Plans").

23  Compounded Drugs

24  8.   In general, "compounding" was a practice in which a

25  licensed pharmacist, a licensed physician, or, in the case of an

26  outsourcing facility, a person under the supervision of a

27  licensed pharmacist, combined, mixed, or altered ingredients of

28

3

1  a drug or multiple drugs to create a drug tailored to the needs

2  of an individual patient.  The Food & Drug Administration did

3  not verify the safety, potency, effectiveness, or manufacturing

4  quality of compounded drugs, that is, compounded drugs were not

5  FDA-approved.  The California State Board of Pharmacy regulated

6  the practice of compounding in the State of California.

7       9.   Compounded drugs were prescribed by a physician when

8  an FDA-approved drug did not meet the health needs of a

9  particular patient.  For example, if a patient were allergic to

10 a specific ingredient in an FDA-approved medication, such as a

11 dye or a preservative, a compounded drug would be prepared

12 excluding the substance that triggered the allergic reaction.

13 Compounded drugs would also be prescribed when a patient could

14 not consume a medication by traditional means, such as an

15 elderly patient or a child who could not swallow an FDA-approved

16 pill and needed the drug in a liquid form that was not otherwise

17 available.

18 B.   OBJECTS OF THE CONSPIRACY

19      10.  Beginning by no later than in or about August 2013,

20 and continuing through at least in or about May 2015, in Los

21 Angeles County, within the Central District of California, and

22 elsewhere, defendant FRIEDMAN, Pharmacy Owner A, and Marketer A,

23 and others known and unknown to the United States Attorney,

24 knowingly conspired to commit the following offenses against the

25 United States:

26           a.   mail fraud, including through the deprivation of

27 honest services, in violation of Title 18, United States Code,

28 Sections 1341 and 1346;

4

1    b.    wire fraud, including through the deprivation of

2  honest services, in violation of Title 18, United States Code,

3  Sections 1343 and 1346; and

4    c.    use of the mails and interstate facilities in aid

5  of bribery, in violation of Title 18, United States Code,

6  Section 1952(a)(1) and (3).

7  C.    MANNER AND MEANS OF THE CONSPIRACY

8    11.    The objects of the conspiracy were carried out, and to

9  be carried out, in substance, as follows:

10    a.    Pharmacy Owner A would pay Marketer A kickbacks

11  in exchange for arranging for, recommending, and causing the

12  referral of, pre-formulated prescriptions for compounded drugs

13  and other pharmaceuticals (collectively, "Kickback Tainted

14  Prescriptions") to New Age.

15    b.    Based on these payments, Marketer A would offer

16  kickbacks and bribes to defendant FRIEDMAN, who, in response to

17  the promise of kickbacks and bribes, would refer and cause the

18  referral of Kickback Tainted Prescriptions to New Age.

19    c.    New Age would dispense compounded drugs and other

20  pharmaceuticals authorized by the Kickback Tainted

21  Prescriptions, send these items to patient-beneficiaries through

22  the mail, and submit the corresponding claims for reimbursement

23  to the Affected Health Care Plans.

24    d.    Based on these reimbursements, New Age would pay

25  Marketer A, who, in turn, would write checks representing

26  kickback and bribe payments to defendant FRIEDMAN, who would

27  continue to authorize Kickback Tainted Prescriptions.

28

5

D.    OVERT ACTS

12.    In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendant FRIEDMAN and other co-conspirators known and unknown to the United States Attorney, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1:    On or about August 7, 2013, defendant FRIEDMAN caused Marketer A to issue check number 2032, drawn on Marketing Entity A's Bank of America account ending in 0636 (the "0636 BofA Acct"), in the amount of $22,000, to defendant FRIEDMAN.

Overt Act No. 2:    On or about March 27, 2015, defendant FRIEDMAN caused Marketer A to issue check number 1110, drawn on the 0636 BofA Acct, in the amount of $40,000, to defendant FRIEDMAN.

Overt Act No. 3:    On or about May 28, 2015, defendant FRIEDMAN caused Marketer A to issue check number 1147, drawn on the 0636 BofA, in the amount of $32,600, to defendant FRIEDMAN.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(7), 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

13.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given to defendant FRIEDMAN that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant FRIEDMAN's conviction of the offense set forth in this Information.

14.   Defendant FRIEDMAN so convicted shall forfeit to the United States of America the following:

(a)   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

15.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant FRIEDMAN so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant FRIEDMAN, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially

7

1    diminished in value; or (e) has been commingled with other

2    property that cannot be divided without difficulty.

3                                    NICOLA T. HANNA
                                     United States Attorney
4

5

6                                    BRANDON D. FOX
                                     Assistant United States Attorney
7                                    Chief, Criminal Division

8                                    RANEE A. KATZENSTEIN
                                     Assistant United States Attorney
9                                    Chief, Major Frauds Section

10                                   KRISTEN A. WILLIAMS
                                     Assistant United States Attorney
11                                   Deputy Chief, Major Frauds Section

12                                   ASHWIN JANAKI RAM
                                     Assistant United States Attorney
13                                   Major Frauds Section

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     8